3-0-9-0-3-1-7, people of the state of Illinois, I believe I believe in felony v. Raymond Stinn, felon by Carrie Bryson. Carrie Bryson. May it please the court, counsel, you know I'm Carrie Bryson, I represent Raymond Stinn in this appeal. We've raised two issues on appeal. The first question is whether the defendant was proved guilty beyond a reasonable doubt of felony murder based on an attempt robbery. And the second challenge is the admission into evidence of a lengthy video recording of the defendant's interrogation, actually two recordings of interrogations. I plan to focus my comments today on the first issue, but of course I'd be happy to entertain questions on either. The defendant was tried on two counts of felony murder in this case. He was acquitted of an account based on straight robbery, convicted of the count based on the attempt robbery. And it's that conviction we argue is not proved beyond a reasonable doubt. No, it's not what you might think of as a traditional reasonable doubt argument, where the defendant's arguing the state failed to prove he was present or involved in something, you know, or was there when it happened. But rather, the argument is that the state's evidence was insufficient to prove that specific underlying felony, the attempt robbery. Instead, the evidence tended to show a plan to commit a theft by selling junk marijuana. I think they refer to it as huff and stuff, sometimes called ditch weed, to this victim at an inflated price, which would amount to a theft under the criminal code, but not a robbery, and so therefore not an attempt robbery. We've raised the challenge and kind of focused on two areas where the evidence falls short, in terms of showing intent to commit the robbery and then also substantial step. Now, as to the intent, it seems the state's argument depends largely on this statement that the defendant made during the videotaped interrogation. It's a single statement, an isolated comment during several hours of interrogation. They're asking, you know, what was going to happen, and the defendant said Pills, who is not identified by any other name but apparently the person who actually did the shooting. Pills said he was going to take Zoe's money, Zoe being the victim. That statement, isolated and taken out of context, might tend to suggest that, but considered in context of the whole statement, they're talking about, and the defendant keeps talking about, is a plan to sell this ditch weed at an inflated price to the victim and get his money that way. Well, wouldn't it be up to the trier effect to decide what statement that is? Well, I mean, it's up to the trier effect if they're drawing a reasonable inference or, you know, it's a rational trier effect statement. I mean, I think considered in light of all the evidence in this case, the trier effect's decision was unreasonable and not supported by the evidence here. The evidence largely and overwhelmingly supports this plan to sell marijuana, cheap, you know, quality marijuana at an inflated price, and that shows a theft and not an attempt robbery because there isn't anything else that would indicate that there was a plan or an attempt to rob. I mean, his friend didn't show up armed. There's no evidence that he made any kind of a threat, that he made any kind of a demand for money. You know, we don't have anybody else, any other eyewitness. His friend showed up armed, did he? His friend did show up armed, but again, there's no evidence that that was any part of any plan. You know, the evidence overwhelmingly tends to suggest this plan to sell marijuana. Zoe, the victim, calls his girlfriend on the day of this offense. The girlfriend happens to be the defendant's sister. Zoe tells the girlfriend, I'm looking to buy some pot, you know, and apparently he then was a dealer and would have resold. The sister says, well, let me call my brother, who is my client, the defendant, and she puts them in contact. Zoe arranges to meet up with the defendant and go purchase what was planned to be $200 of marijuana. So my client tells his friends that this is what he's going to do, and he's going to take them over to the weed man's house, and again, this is the only name we have for the person where they were going. They're going to the weed man's house to make this deal. Then apparently there's some discussion between the defendant and Pills, and possibly a third person, only identified as Gotti, about what they might actually do, and it turns out that the defendant and Pills plan to sell. They have some bad quality marijuana to sell to Zoe instead. So the defendant rides with Zoe to the area of the weed man's house. They park in the sale and they wait, knowing that Pills is going to come up and act as the drug dealer and bring this poor quality marijuana to the scene, wait for him. Instead, Pills shows up and shoots the victim. No evidence that there was, again, any plan that anybody would be armed, any threats, any force was to be used. It was supposed to be a drug deal, albeit a drug deal where Zoe was going to get jumped for $200. Now, part of the problem, too, in relying on just that one portion of the defendant's statement is you've raised a corpus selecti issue about that in the brief, and the state hasn't really responded to that in their brief, but as the Court's well aware, and as the Supreme Court recently again talked about in Sargent, I mean, there is a corpus selecti requirement. You can't rely just on a defendant's statement to prove a crime, and you have to corroborate the statement. You have to corroborate it as to the specific crime, not just any crime, but as to the specific crime. In that Sargent, we cited the appellate court decision from Sargent, which was a Second District case from 2009. The Supreme Court just in November upheld the decision in that case. And again, there's no corroboration of any plan here. I mean, even if we take the defendant's statement from these hours of videotaped interrogation, take that one statement and say, well, yeah, that's the evidence of the plan, there's nothing else to corroborate that. So even if the defendant is saying, I plan to commit an attempt or I plan to commit a robbery, and again, I suggest that's misinterpreting that statement considered in context of the entire tape and the entire interrogation, but even taking that, there has to be some corroboration, and there is none of that here, because again, nobody saw an attempt to take money. The defendant didn't bring a weapon. The victim still has money on him in his wallet, not like it's secreted away somewhere. I mean, he still has money in his wallet when the police find him. It's pretty thin that this was a plan to commit a robbery versus a theft. I think the evidence is overwhelming that the defendant was surprised by what ended up happening here, that he's expecting there to be a drug deal because that's what they planned to do, and instead pills shows up. And for, again, no reason that's clear from the record because, again, we don't have pills. Pills is never charged. This record never even identified by name. I don't know who he is. With this, we don't have any reason behind why he would just come up and shoot. Wasn't there conflicting testimony or evidence about whether your client was in the car when the shot was fired? Well, my client says he was in the car when he sees or hears the shot gets out of the car. There's some evidence from the crime scene examiner, or maybe it was medical, about the blood on the front seat and that there was no void in blood on the passenger side front seat that would tend to suggest that someone was in that spot. So if that's the evidence you're talking about, if you look at the photographs of the scene, there's not a whole lot of blood on that other seat. I mean, I don't know how fast it would have come out, whether it's something that could have dripped off the victim as he's sitting there and bleeding. The defendant said he got out of the car. I mean, it's just a matter of did he get out of the car right at what exact point. I mean, I'm not sure how that affects whether this was supposed to be a theft or a robbery. To me, that doesn't make a big difference in terms of what was the planned and intended crime here. In addition to the intent issue, we've also argued that there wasn't a substantial step. Now, I think the state's relying on taking Zoe to this location as a substantial step and knowing that pills is coming to this location. But again, that's wholly consistent with an intent to commit a theft versus an intent to commit a robbery. Again, there's no evidence of any demand for money, which might be construed as a substantial step. The defendant's not armed. He doesn't take any efforts to conceal his identity. Other people know that he's going to be the person with the victim on this night at this time, that he's supposed to be arranging a drug deal, including the defendant's sister and the victim's aunt. And the defendant didn't even take the money after Zoe was shot. So, I submit on this record the evidence is overwhelming that what we have here was an intent to commit a theft, not an intent to commit a robbery. Because the attempt robbery is an essential element of the felony murder that was charged in this case, that conviction should be reversed outright, unless the court has questions. That's it. Thank you. Thank you, Ms. Grayson. Ms. Kelly? May it please the Court, Counsel? People would submit that the intent element was proved in this case, that the defendant, which is our argument in Issue 2, wanted the entire statement to come in, because that was the only way he could get his theory that they were setting up this theft by deception to sell junk weed in front of the jury, when, in fact, what they intended all along was to rob Zoe. If, in fact, they just intended to have a swindle, a straight-up sale, they could have done it right there. There was no reason to go anywhere. In this case, the defendant got a call from his sister and then from Zoe asking to set up a drug deal. And he was with Pills and Gotti when he got that call. And he said he didn't have a car. Well, that's okay. Zoe will come pick you up. Well, Pills overheard this and said, you know, let's go rob him. So then at that point, then, the defendant gets picked up by Zoe and directs him to go to this isolated alley in the middle of nowhere, knowing that Pills is following him. If they just wanted to do a swindle, giving him ditch weed in return for money, that could have been done right where they were. There was no reason to drive to an isolated area. That's why the people argue that the substantial step that the defendant took was to get the victim to a place where this robbery occurred. To go to the weed man's house? If that were the case. Right. I'm from Rock Island, but I don't know that. Right. But on the other hand, in the defendant's, from what the defendant has said, there never was an intent, obviously, to go to the weed man. That was used as an excuse. He tells Zoe, well, you've got to drive me to the weed man's house and we've got to wait a few minutes for the weed man. That's to get Zoe to drive away from the area and go to an isolated area where there's nobody else around, where Pills can come up with the weapon or whatever manner of force he was going to use and just steal the money. And people also dispute that it was an isolated statement, one isolated statement, that Pills wanted to rob him. In fact, later on, the defendant acknowledges that Pills' way of getting money is to hustle and steal things from people and rob people. So the people submit that the evidence is available and clear and was found to be there by the jury. So you're saying that them driving to the alley, to the secluded area or whatever, is the corroboration? Exactly. It's also the corroboration for the offense, that the offense was the intent to rob the victim Zoe rather than just trade him bad weed. Because the trading of bad weed could have been done anywhere. There'd be no need to use force. There'd be no need to have a gun. But wasn't it throughout the statement that it isn't that Mr. Stint had the bad weed? Wasn't it that Pills, who was masquerading as weed, was the person that was going to have the actual physical product of bad marijuana? The bad weed thing, it's a red herring. It didn't exist at the time that this crime was planned and done. At the time, he said, you know, Zoe wants to buy some weed. And Pills said, let's rob him, so let's get him away from here. So the defendant says, okay, fine, I'm going to make him go to the weed man's house. And there'll be an alley and you follow me there, which is what Pills did. And the defendant even turned around and checked and made sure Pills was following him. That the idea was for Zoe to think they were going to a place where there was going to be somebody selling marijuana. And that's how he got him to drive him away to an isolated area. And then the plan was that then Pills would approach the car from behind and come up with his gun. And rob, just take the money that Zoe had planned to buy marijuana with. And I'm sorry, the portion of the statements that I viewed, I don't ever hear the admission of that. You're saying the entirety of the statement says, play for the entire fact. He makes that admission that that was our plan all along? No, he never says it. He never says that. But there are, and I have the page references to the transcript in here. There is one point where he acknowledges that Pills had the plan to rob him. And I, Pills said he was going to take Zoe's money and with defendant's knowledge found Zoe. So it would be in the exhibit I've got down here, 131 through 132. Right, so I mean it, to take his money, yeah. I mean it, based, I mean it, I guess the problem that I'm having is that, I mean all along they had planned to take money from, you know, to swindle him. Or to, you know, or what you say is true. And I just, I guess I'm having a hard time finding that he is saying all along that he, you know, why would he be planning a robbery when he's the one with him. And everybody knows he's with him. It seems that if we're talking about corroboration, that it plays more into what the defense is arguing. That, you know, no, we were going to take his money. We were going to give him, I don't know, grass or oregano or something. You know, we were going to give him something that wasn't what he thought he was getting. They could have done that anywhere. There was no need to remove him to an isolated area to do a swindle. And additionally, we have the defendant saying to his sister, when this is being set up, I hope you don't like the guy too much. So the defendant knew that something else was going on and the ditchweed idea that people would submit came later. That that's a red herring in this. And initially, of course, he starts out telling the police he wasn't involved, he wasn't there. So it's not like he started out from the beginning saying, okay, this was a, you know, a swindle that went bad. It comes out over time and he comes up with this idea. And then the defense counsel ran with that and argued to the jury that it was just a, you know, a swindle gone bad and that that's not a forcible felony. That was the argument the defendant made below, which again goes back to the second issue and why he wanted this statement in there. But I believe that that's a red herring, that the plan all along had been to rob him to get him to an isolated area and then to have pills come up from behind while Zoe was sitting there waiting for a weed man to come out of the house. So the ditchweed is a red herring. And in fact, the plan was to rob him. And the defendant knew that and even knew it when he said to his sister, you know, I hope you don't like the guy. Does that seem to make much sense to you when it's not, when the whole idea is initiated by the victim? I mean, you know, if somebody's handing you this idea on a silver platter where it's like, you know, it'd be easier if we just shoot him and take his money or stick him up. I mean, it just, it doesn't seem real plausible to me. And you say, hey, I want this weed and here's 200 bucks. It seems like they've sort of handed him their excuse. And perhaps if when he got the phone call, he hadn't been with his evil companions, that's all that would have happened. But in fact, he was with pills and Gotti when he got the call. Pills suggested this and he went along with it. Well, could it be because when the guy's ready to make a buy, you pretty reasonably assume he has the money that you want to steal? Yeah, that's correct. I mean, it's all as part of the setup. The guy has called soliciting and knows he has about $200 to spend. I believe even Felicia, the sister, told the defendant he wants to buy about between $2 and $225 worth of weed. So they figure he's got that money on him. And the defendant's blabbing this to the people he's with and they come up with this plan and the defendant goes along with it. The defendant could have said no. He could have said I'm not taking him anywhere. Question? I was going to say this is hardly the first guy that went out to buy drugs that got a bullet between the ears instead of the drugs that he thought he was going to get for his money, right? That's correct. It's not like this plan has not existed in other cases. So the people would rely on the brief for the rest of the argument, but the people believe that both the intent for the underlying offense, the underlying force of the felony, and the substantial step were proved in this case and that the jury verdict should be sustained. Thank you. As for the issue of why they would go to the location of the weed man if it was just going to be a drug deal, why didn't they do that where they were? I mean, they were still going to give him junk. You know, they don't want it to look like it's the defendant and his buddies giving this guy junk. They want to put this on the weed man that he's selling the bad quality pot, whether it's even pot or not. They want this to be on someone else so that when Zoe finds out what he really bought isn't worth anything, he's not back after the defendant. He's putting this on the weed man, or in this case, pills, posing as the weed man. That's a perfectly reasonable explanation for why they didn't do this at their house. Let me just ask you, and obviously that's a wonderful argument for the jury, and this is Ms. Kelly's, and it seems to me that it doesn't raise the sufficiency of the evidence that the jury can decide whether or not this was, as it states, a plan to take him out and rob him, as opposed to just a plan to take him out and lift. Except for the fact that all of the evidence we have in this case really seems to point to the drug deal and not to a plan to rob. I mean, that's speculation based on what we have here. The bulk of the statement is talking about a theft, a drug deal. The isolated comments that the state is talking about in context still talk about basically taking the money. Well, pills is still going to take the money.  But you've got an isolated location, you've got a weapon. This isn't by itself, I mean, it's not a reasonable inference, or not an unreasonable inference, is it, to say that you don't need a gun to, you know, pull a flim flam on somebody. But again, you don't have any suggestion that the defendant was aware that there was going to be a gun, that he planned that, you know, pills would bring a gun to the location. I mean, that tells, if the defendant is going to be accountable for what pills is doing, there has to be some intent to do the same thing that pills is doing. And that's not here, because there is no evidence that the defendant ever was aware that a gun was going to be brought to the scene by pills. You know, this location they've taken to, there's no dispute that this is where the weed man's house is, that they go to the alley where the weed man's house is. It makes sense to go there to do a drug deal. This starts with a request to buy drugs. What if the defendant got out of the car before the shooter started? I still don't understand how that is problematic. I mean, if the defendant's getting out, maybe he's getting out because he thinks, you know, pills is walking up and he's supposed to make the initial contact with pills as the weed man. Or maybe he's getting out because he doesn't want to get hit by that bullet. There's no evidence of that. I mean, this is a lot of speculation and no evidence that he had any inkling that pills was coming here with a gun and that he was going to shoot, just walk up and shoot. I mean, even if this was a plan to do a robbery, which the evidence doesn't suggest, pills is kind of going rogue here, walking up, just firing a shot. You know, the defendant's startled. He's not expecting this. This isn't the plan. The plan is to do a drug deal, to give him junk, get his money. Everybody on the defendant's side walks away without Zoe knowing that, you know, they did this, that they were the ones who duped him, swindled him. They think, you know, Zoe's left thinking it was the weed man. Other people who know that the defendant is going to meet up with Zoe to do this deal, Zoe, the defendant's sister, Zoe's aunt, they have no reason then to suspect the defendant had done something wrong. If this goes off as planned, and it was planned as a theft. It was not planned as a robbery. You know, the comment, I hope you don't like him, to the sister, is pretty ambiguous. If what he's really, again, if he's planning to sell junk, I mean, Zoe's going to be mad. He's going to be mad in a lot of, you know, looking around to see who did this, and he's going to be mad about it. So, yeah, I hope you don't like him because he's going to be pretty ticked when he realizes, you know, I sold him oregano or grass or just bad quality marijuana. You know, to suggest the defendant in making his statement to the police during this interrogation has the legal sophistication to kind of admit a robbery and then back off of it because if I admit that there was an attempt robbery, I'm guilty of felony murder. But if I back off that and say, well, it was just a plan to do a drug deal or a theft, and then I'm not responsible, it seems implausible to me. I mean, this, to suggest he would know that there were a difference between admitting a variety of different crimes and your level of responsibility for the ultimate act, which I think you have to think to buy the State's argument that, oh, he realized he said too much and came off of it. I mean, I think what we end up with here is the defendant very consistently repeating during his statement it was a plan for a drug deal. Tillis shot him. I don't know why. It was not the plan. The robbery was not the plan. It was the drug deal. Beyond that, if the Court has other questions, otherwise I maintain our request to reverse the conviction outright. All right. Thank you. Thank you, Ms. Bryson. Thank you both for your arguments here this morning. This will now be taken under advisement. A written disposition will be issued in due course.